# No. 12,851.

INDEPENDENCE INDEMNITY COMPANY *v.* SILVER STATE BUILDING AND LOAN ASSOCIATION.

(25 P. [2d] 726)

Decided June 19, 1933. Rehearing denied October 2, 1933.

Messrs. BARTELS & BLOOD, Mr. ARTHUR H. LAWS, for plaintiff in error.

Mr. EDGAR McCOMB, Mr. MILTON D. GREEN, Mr. WALTER E. SCHWED, for defendant in error.

Messrs. Twitchell, Clark & Burkhardt on petition for rehearing.

*En Banc.*

Mr. Justice Butler delivered the opinion of the court.

The Silver State Building and Loan Association, referred to herein as the Building Association, sued Independence Indemnity Company, a Pennsylvania corporation, referred to herein as the Indemnity Company, on a bond, and recovered a judgment. The Indemnity Company seeks to have that judgment reversed.

In June, 1928, the Dencol Investment Company, referred to herein as the Investment Company, and the Building Association executed an agreement to exchange real property. The agreement refers to the Investment Company as the owner of an apartment house, and the Building Association as the owner of eight properties situated in Denver, Fort Collins and Canon City. The apartment house was being built, and the Investment Company agreed to complete it, and to furnish to the Building Association, upon the execution of the agreement, a copy of the plans and specifications, the builders' contracts and a "completion bond." As consideration for the apartment house, the Building Association was to convey the eight properties to the Investment Company, pay $20,000 in cash and lend to the Investment Company $2,000 on its note secured by trust deed of one of the eight properties. The agreement provided for $1,000 liquidated damages should either party breach the contract. The agreement was signed in behalf of the Investment Company by "Randolph Crews, Pres." Crews, it is admitted by the Building Association, was the owner of the entire capital stock of the Investment Company, with the exception of a few shares issued to others to qualify them to act as directors. For some reason the record title to the apartment house stood in the name of

one Basil W. Minard, and when the exchange was made Minard executed the conveyance of the apartment house to the Building Association. In compliance with the agreement, a bond in the sum of $30,000, securing the completion of the apartment house free and clear of liens, was delivered to the Building Association. The bond was executed by Minard as principal, and by the Independence Indemnity Company as surety, by "Randolph Crews, its attorney in fact." The Building Association paid the $20,000, and, at Crews' request, conveyed the eight properties to Randolph Crews personally, instead of to the Investment Company, and loaned to Crews personally $8,400, taking his personal notes secured by his trust deeds of the eight properties. A few days after the completion of the exchange the work on the apartment building ceased, and Crews disappeared. He never reported to the Indemnity Company the writing of the bond. The company never received the premium. It had no knowledge of the transaction until the Building Association made a claim against it, unless the knowledge possessed by Crews was imputed to the Company. The Building Association was obliged to pay mechanics' liens amounting to $19,015.30, and it cost it $15,021.23 to complete the building. It sued on the bond, and the court rendered judgment in its favor in the sum of $30,000 principal and $6,567 interest, in all $36,567.

Crews was the statutory Colorado agent of the Indemnity Company, and also had a power of attorney authorizing him to execute surety bonds and undertakings, which "shall be binding upon the said company as fully and to the same extent as if such bonds and undertakings were signed by the president and secretary of the company and sealed with its corporate seal." The power conferred is broad, but is not sufficient to authorize the execution of a bond in a transaction in which the agent has a personal interest adverse to that of his principal, or represents another who has an interest adverse thereto; and if the obligee accepts the bond knowing that the

agent has or represents such adverse interest, he cannot recover on the bond unless he proves that the principal, with full knowledge of the facts, assented to or ratified the act of the agent.

Crews' Investment Company was under contractual obligation to furnish to the Building Association a completion bond. As the owner of practically all of the Investment Company's capital stock, Crews was interested financially in discharging that obligation, so as to relieve his Investment Company from liability in damages for a breach of contract, and so that the agreement for the exchange of properties might be carried out. His official duty to his Investment Company required him to procure such bond. That duty and his personal interest were antagonistic to his duty to the Indemnity Company. In representing the Investment Company, it was his duty to get the bond on the best possible terms, without being over critical as to the nature of the risk; whereas, as agent of the Indemnity Company, it was his duty to endeavor to obtain terms most favorable to that company, and to consider critically the nature of the risk. As he owed to each company his undivided loyalty and his best service in making the deal for the bond, it is obvious that there was a conflict of duties. One so situated cannot make a contract for his two principals, without their consent or ratification with full knowledge of the facts; much less can he do so where, as here, he has a personal financial interest in common with one principal and adverse to the other. *British America Assurance Co. v. Cooper,* 6 Colo. App. 25, 40 Pac. 147; *Salene v. Queen City Fire Insurance Co.,* 59 Ore. 297, 116 Pac. 1114; *Riverside Development Co. v. Hartford Fire Insurance Co.,* 105 Miss. 184, 62 So. 169; *Rockford Insurance Co. v. Winfield,* 57 Kan. 576, 47 Pac. 511; *Ramspeck v. Pattillo,* 104 Ga. 772, 30 S. E. 962; 32 C. J. 1071.

The Building Association, at the time it accepted the bond, knew that the exchange agreement requiring the Investment Company to furnish a completion bond

was executed in behalf of that company by Crews as its president, and that the bond furnished pursuant to that agreement was executed in behalf of the Indemnity Company by Crews as its attorney in fact. The Building Association knew, also, that Crews was a stockholder in the Investment Company. It knew that he was its president; and the president, of course, must be a director, and a director must be a stockholder. C. L. §§2250, 2263. The Building Association admits that the stock of the Investment Company was owned by Crews. It knew that Crews owned practically all of the stock—in fact, that, for all practical purposes, Crews was the corporation. As we have seen, the Building Association conveyed the eight properties, not to the Investment Company, but, at his request, to Crews personally, loaned him personally $8,400, and took his personal notes for that amount secured by his trust deeds of the eight properties.

It is said that Crews was the Indemnity Company's sole representative in Colorado; that he knew all of the facts; that his knowledge was imputed to the Indemnity Company; that his act in executing the bond was the act of the company; and that therefore, in legal contemplation, the company executed the bond with full knowledge of the facts; hence it cannot escape liability. "Where the agent is the *sole* representative of the corporation, the corporation can not claim anything except through him and * * * therefore if it claims through him, after notice of the facts, it must accept his agency with its attendant notice." Mechem on Agency (2d Ed.), §1825. That statement, quoted with approval in *McFerson v. Bristol*, 73 Colo. 214, 214 Pac. 395, has no application to the facts in the present case. The Indemnity Company is not in the position of one seeking to enforce a contract made by his agent, or claiming some right under the contract or through the agent. Quite the reverse.

The evidence indicates that Crews was perpetrating a fraud. The facts known to the Building Association were of an extraordinary and suspicious char-

acter. In the circumstances, Crews' statement to an officer of the Building Association that the course pursued by Crews was his "method of handling transactions of this kind for the protection of the bonding company" can not be held to be the statement of the Indemnity Company, and the Building Association was not justified in relying upon that statement as the statement of the Indemnity Company. Counsel for the Building Association say in their brief: "But nowhere in the record of this case is there any testimony * * * that the method which he pursued * * * was not in fact known to or approved or authorized by his principal." The trouble with that statement is that it puts the burden of proof on the wrong party. The important fact is that it does not appear that the Indemnity Company authorized or approved the method pursued by Crews, or knew that he was pursuing that method.

Other matters are argued by counsel, but we need not discuss them.

Our conclusion is that in the circumstances disclosed by the record, the Building Association was not entitled to judgment.

The judgment is reversed.