43 F.3d 1484
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNIBRIDGE SYSTEMS, INC., Plaintiff-Appellant,
and
Joe Hamilton; and Linda L. Hester, Plaintiffs,
v.
PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant-Appellee.
and
Pruco Securities Corporation; John M. Bellevue, a/k/a Jack
Bellevue; and Bellevue Investment Corporation,
Defendants.
Joe HAMILTON; Linda L. Hester; and Unibridge Systems,
Inc., a corporation, Plaintiffs-Appellees,
v.
PRUDENTIAL INSURANCE COMPANY OF AMERICA; Pruco Securities
Corporation, Defendants-Appellants,
and
John M. Bellevue, a/k/a Jack Bellevue; and Bellevue
Investment Corporation, Defendants.
 Nos. 94-6021, 94-6039, 94-6067.
 United States Court of Appeals, Tenth Circuit.
 Dec. 21, 1994.
 
 1
 Before BRORBY and EBEL, Circuit Judges, and SAM,** District Judge.
 
 ORDER AND JUDGMENT[1]
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed.R.App.P. 34(f); 10th Cir. R. 34.1.9. The cases are therefore ordered submitted without oral argument.
 
 
 3
 In cases Nos. 94-6021 and 94-6039, Appellant Unibridge Systems, Inc. (Unibridge) appeals the district court's entry of summary judgment in favor of appellee Prudential Insurance Co. (Prudential).[2] We exercise jurisdiction under 28 U.S.C. 1291, and we reverse and remand.
 
 
 4
 We review the grant of summary judgment de novo, using the same standard as the district court under Fed.R.Civ.P. 56(c). Blue Circle Cement, Inc. v. Board of County Comm'rs, 27 F.3d 1499, 1503 (10th Cir.1994). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We examine the factual record and the inferences that reasonably can be drawn from the facts in the light most favorable to the party opposing summary judgment. Applied Genetics, Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). Our review of the district court's rulings based on the law of Oklahoma is de novo. Salve Regina College v. Russell, 499 U.S. 225, 231 (1991).
 
 
 5
 The underlying facts viewed in the light most favorable to Unibridge are as follows: Unibridge sought financing to purchase the manufacturing plant and real estate it leased and occupied, known as the Wen-Clay property. Although Unibridge had arranged for financing through the Bank of Woodward, it was interested in finding financing on more favorable terms than those offered by the Bank. To that end, Unibridge officials met with Jack Bellevue, whom they believed was Prudential's agent. Based on that belief, and in order to convince Prudential to provide financing, Unibridge officials revealed to Bellevue confidential information concerning the property's value, including the cost of a necessary environmental cleanup, and the general condition of the manufacturing and office facilities.
 
 
 6
 Bellevue stated he could obtain financing from Prudential, and a brief written statement was exchanged whereby Unibridge granted "the exclusive right to Jack Bellevue or his assignee," excepting the Bank of Woodward, to locate financing for the Wen-Clay purchase. Appellant's app. at 521. Thereafter, Bellevue proposed to Unibridge that he purchase the Wen-Clay property, and sell part of it to Unibridge. Unibridge officials did not agree to Bellevue's alternate plan, and became alarmed at Bellevue's attempt to compete with Unibridge for the Wen-Clay property. Unibridge's president refused Bellevue's subsequent telephone calls.
 
 
 7
 Unibridge then entered into negotiations with the seller to purchase the property, believing it necessary to consummate the purchase before Bellevue outbid it. In fact, Bellevue did submit an arguably competitive bid to purchase the property. Using the financing arranged through the Bank of Woodward, Unibridge ultimately purchased the property. Unibridge claims damages, including loss of economic gain, based on Bellevue's unlawful acts.
 
 
 8
 On appeal, Unibridge argues the district court erred in holding Bellevue was not Prudential's agent at the time Bellevue suggested that he buy the property, and subsequently bid against Unibridge. We note that the district court found disputed material facts relating to whether Bellevue was Prudential's agent at the time Bellevue obtained the confidential information. Further, the district court indicated summary judgment was not appropriate on the question of whether Bellevue's conduct was unlawful.[3] While we agree with the district court that the issue of whether Bellevue was Prudential's agent presents a genuine issue of material fact, we cannot agree that Prudential is absolved of liability on the ground that Bellevue later acted on his own. Accordingly, we must reverse and remand for trial.
 
 
 9
 Prudential argues for affirmance of the summary judgment on the ground that plaintiff failed to demonstrate the existence of any relationship between Unibridge and Prudential. An appellee may urge affirmance of a judgment in its favor on any ground supported by the record without filing a cross-appeal. Tinkler v. United States ex rel. FAA, 982 F.2d 1456, 1461 n. 4 (10th Cir.1992).
 
 
 10
 Prudential contends the inferior quality of Unibridge's evidence justifies summary judgment. By arguing that the statements proffered by Unibridge are "self-serving" and "after-the-fact," Prudential misapprehends the rule that "[a]t the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter." Concrete Works of Colo., Inc. v. City & County of Denver, 36 F.3d 1513, 1518 (10th Cir.1994)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). Moreover, Prudential identifies no inconsistent prior statements made by plaintiff's witnesses, or other examples of manufactured factual disputes, to support its argument that plaintiff attempted to create "sham" issues of fact. Consequently, we decline Prudential's invitation to appraise the evidence.
 
 
 11
 We turn to the question of whether the evidence supports Unibridge's claims that Prudential is liable as Bellevue's principal for any damages Bellevue caused. Unibridge asserts two agency theories of liability: actual and apparent authority. Unibridge, as the party asserting it, has the burden of proving the existence, nature and extent of the agency relationship. Enterprise Management Consultants, Inc. v. State ex rel. Okla. Tax Comm'n, 768 P.2d 359, 362 (Okla.1988).
 
 
 12
 Unibridge claims Bellevue had actual authority to act as Prudential's agent. An agency relationship arises when two parties agree that one is authorized to act for the other, or by their conduct, they indicate that one is willing to act for the other. Haworth v. Central Nat'l Bank of Okla. City, 769 P.2d 740, 743 (Okla.1989). Authorization for an agency relationship based on actual authority can be express or implied. Curtis v. CIA Mach., Inc., 571 P.2d 862, 865 (Okla. Ct.App.1977)(citing Farmers Nat'l Grain Corp. v. Young, 102 P.2d 180, 185 (Okla.1940)).
 
 
 13
 Plaintiff's other theory of liability is that Bellevue had apparent authority to act for Prudential.
 
 
 14
 " 'Apparent authority' of an agent is such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing." Three elements must exist before a third party can hold a principal liable for the acts of another on an apparent-agency princip[le]: "(a) conduct of the principal [which would reasonably lead the third party to believe that the agent was authorized to act on behalf of the principal], (b) reliance thereon by the third person, and (c) change of position by the third party to his detriment."
 
 
 15
 Sparks Bros. Drilling Co. v. Texas Moran Exploration Co., 829 P.2d 951, 954 (Okla.1991) (quoting Rosser-Moon Furniture Co. v. Oklahoma State Bank, 135 P.2d 336, 338 (Okla.1943)). Apparent authority arises from manifestations from the principal to a third party indicating that another is its agent, where it is reasonable for the third party to believe the agent is authorized. Southwestern Bell Media, Inc. v. Arnold, 819 P.2d 293, 294 (Okla. Ct.App.1991)(citing Stephens v. Yamaha Motor Co., 627 P.2d 439, 441 (Okla.1981)). The manifestations from the principal may either be directed to the third party, or conveyed to the community through signs or advertising. Arnold, 819 P.2d at 294 (citing Stephens, 627 P.2d at 441).
 
 
 16
 The following evidence is uncontroverted: Prudential had an employment relationship with Bellevue, as evidenced by a written contract.[4] Prudential paid directly Bellevue's secretary's salary and a portion of his office rent, and Prudential alone decided on errors and omissions insurance for Bellevue.
 
 
 17
 In addition, the Prudential-Bellevue contract contained a handwritten modification of the boilerplate permitting Bellevue to receive a fee for "pension related services." Appellant's app. at 494. Unibridge presented evidence that Prudential invests third-party pension funds in real estate mortgages. Id. at 251. Furthermore, the vice president of one of Prudential's mortgage-lending subsidiaries testified that Prudential writes mortgage loans on real estate for properties brought in by outside firms, albeit for mortgage amounts far exceeding the loan sought by Unibridge. See id. at 248 (Gleason: Prudential lends mortgage funds in excess of five million dollars). In addition, the witness testified that Prudential also makes loans to businesses to purchase manufacturing facilities. Id. at 253. He acknowledged that insurance agents have called him with prospective loan customers, id. at 258, and he identified a Prudential contract stating that commissions could be paid to "special agents," id. at 266. Bellevue was designated as a "special agent." E.g., id. at 424, 493.
 
 
 18
 Unibridge also presented evidence that Prudential advertises for the company as a whole, and the consumer cannot tell the difference between the company and the ordinary agent by its advertising. Id. at 457. Prudential intended its agents to use Prudential's business cards and stationery to convey to the general public its agents represent Prudential, and that Prudential fulfills its commitments. Id. at 415-17; cf. FDIC v. Langley, 792 F.2d 547, 549 (5th Cir.1986)(agency relationship not established by business card bearing name of different entity).
 
 
 19
 We conclude plaintiff has demonstrated the existence of material factual disputes over the nature and extent of Bellevue's actual or apparent authority to act for Prudential. Consequently, we deny Prudential's request to affirm the summary judgment on the ground that Unibridge cannot establish the existence of a relationship between Prudential and Unibridge.
 
 
 20
 We next address whether the district court correctly concluded that Prudential is absolved of liability on the ground that Bellevue acted on his own behalf when he committed the allegedly unlawful acts. Under Oklahoma law, the loss occasioned by an agent's exceeding his initial authority is placed on the principal as the party who has enabled the agent to cause the loss. Boren v. Beacon Life Ins. Co., 372 P.2d 593, 601 (Okla.1962).
 
 
 21
 Even if Unibridge understood Bellevue to be acting on his own when he offered to purchase the property for himself and when he bid against Unibridge, it is undisputed that Bellevue's actions were based on information obtained while he was arguably Prudential's agent. Therefore, Prudential is liable to Unibridge for Bellevue's improper acts if the following circumstances are found:(1) Bellevue was Prudential's agent when he received the confidential information; (2) Bellevue would not have received the confidential information but for his status as Prudential's agent; (3) Bellevue owed Unibridge a duty not to use the confidential information for his own gain; and (4) Bellevue breached his duty to Unibridge. Because there are disputed issues of fact as to these issues, summary judgment is not appropriate.
 
 
 22
 Finally, relying on Bayless v. Christie, Manson & Woods, International, Inc., 2 F.3d 347, 353 (10th Cir.1993), Prudential contends it cannot be held liable because Unibridge knew Bellevue's authority was limited to selling insurance. Prudential points to no evidence suggesting that Unibridge knew Bellevue's authority was so limited. At any rate, it is clear that the parties hotly dispute what Unibridge knew or should have known about Bellevue's authority to act for Prudential, questions of fact that cannot be resolved on summary judgment.
 
 
 23
 Because we reverse and remand for further proceedings, we do not address Prudential's claim for attorney's fees, case No. 94-6067.
 
 
 24
 Prudential claims, and Unibridge admits, that certain materials included in Unibridge's appendix were not submitted to the district court. We do not consider evidence that was not before the district court. Boone v. Carlsbad Bancorporation, Inc., 972 F.2d 1545, 1549 n. 1 (10th Cir.1992). Therefore, the following pages of Unibridge's appendix are hereby stricken: Hamilton's deposition, appendix pages 327-28, 349, and 351-54; Donovan's deposition, appendix pages 468-72. See Aero-Medical, Inc. v. United States, 23 F.3d 328, 329 n. 2 (10th Cir.1994)(documents in appendix that were not before the district court will be stricken). Prudential's request to strike Unibridge's entire appendix and brief is DENIED.
 
 
 25
 The judgment of the United States District Court for the Western District of Oklahoma is REVERSED, and the cause is REMANDED for further proceedings consistent with this order and judgment.
 
 
 
 **
 Honorable David Sam, District Judge, United States District Court for the District of Utah, sitting by designation
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 In a contemporaneous order, the district court entered summary judgment against the individual plaintiffs, Joe Hamilton and Linda L. Hester. That order was not appealed. Similarly, plaintiffs do not appeal the district court's order for summary judgment in favor of defendant Pruco Securities Corp. Accordingly, we do not address those issues
 
 
 [3]
 We express no opinion on whether Bellevue acted unlawfully. That issue is not before us
 
 
 [4]
 Although the contract states Bellevue is an independent contractor, Prudential wisely does not argue on appeal that the contract's terminology controls the relationship of the parties. See Enterprise Management Consultants, Inc., 768 P.2d at 362 (agency can be established regardless of labels attached by contract if facts show control by principal); Cahill v. Waugh, 722 P.2d 721, 724 (Okla. Ct.App.1986)("[T]he status of agency and of independent contractor are not mutually exclusive.")